### TOLEDO FAIR HOUSING CENTER et al.

v.

### NATIONWIDE MUTUAL INSURANCE COMPANY et al. ▪

Court of Common Pleas of Ohio,
Lucas County.

No. CI93—1685.

Decided Sept. 1, 1998.

*Cooper, Walinski & Cramer, Stephen Dane, Janet Hales* and *Margaret Lockhart; Washington Lawyers Committee for Civil Rights Under Law* and *John P.*

*Relman; Richard J. Ritter; William Howard Lynch; Hall, Patterson & Charne, S.C.*, and *Gretchen Elizabeth Miller,* for plaintiffs.

*Fox & Grove, Jeffrey Goldman, Allison Blakely, Joel Rice* and *Diane Cifuentes Gerew; Fuller & Henry* and *Martin J. Witherell,* for defendants.

FREDERICK H. MCDONALD, Judge.

1. Plaintiffs brought this action pursuant to Ohio's Fair Housing Act, R.C. 4112.02(H), and alleged in their first amended complaint that the Nationwide companies named in the caption as defendants ("Nationwide") violated that Act by discriminating on the basis of race and racial composition of neighborhoods in the provision of homeowners insurance products in Toledo's African–American neighborhoods. Nationwide denies that it has engaged in the form of discrimination alleged or any other discrimination in violation of Ohio's Fair Housing Act. In order to fully and finally resolve this matter without a trial, the parties reached a negotiated agreement in compromise of plaintiffs' claims, which has been reduced to writing ("the Settlement Agreement") and which is attached hereto as Appendix A.

2. Following its execution by all parties, the Settlement Agreement was submitted to this court for a determination of fairness as required by Civ.R. 23.

3. Notice of the Settlement Agreement was provided in writing to all identifiable class members by regular United States mail between June 8, 1998, and June 26, 1998. In addition, notice of the Settlement Agreement was published in the *Toledo Blade* on June 11 and June 18, 1998, and in the *Toledo Journal* on June 17, 1998. These notices advised class members of the terms of the parties' settlement, advised them of their right to object to the settlement, and gave notice that this court would hold a fairness hearing on the settlement's terms on August 13, 1998. A copy of the Notice of Proposed Settlement and Hearing is attached hereto as Appendix B.

4. On June 8, 1998, counsel for plaintiffs filed a motion for award of attorney fees and costs with a memorandum and exhibits in support, seeking an award of attorney fees from Nationwide in the amount of $1,500,000 and an award of costs and expenses in the amount of $350,000. The court scheduled a hearing on this motion for August 13, 1998.

5. On August 13, 1998, this matter came before the court for hearing on the question of whether the parties' Settlement Agreement fairly, fully, and finally resolved all matters at issue in this litigation and on plaintiffs' motion for attorney fees and costs. Albert Lloyd appeared at the hearing to object to the Settlement Agreement. Additionally, attorney Thomas McCarter spoke at the hearing on behalf of, but not as a legal representative of, Salonda Washington, who wished to

preserve her right to join the case as a named plaintiff. In addition to considering these objections, the court considered the written objection to the settlement filed by Albert Lloyd and Julia Lloyd on July 6, 1998, and a letter from Ennis Pratcher filed on July 10, 1998. The court also heard comments from counsel for the parties. No written objections were filed to the motion for an award of fees and costs.

6. In determining whether the Settlement Agreement is fair and reasonable, the court considered, *inter alia,* the following factors: (1) the likelihood of success or recovery, (2) the amount and nature of discovery or evidence, (3) the settlement terms and conditions, (4) the recommendation and experience of trial counsel, (5) the expense and duration of future litigation, (6) the number of objections to the Settlement Agreement and the nature of the objections, and (7) the presence of good faith and the absence of collusion among the parties and attorneys. See 2 Newberg & Conte, Newberg on Class Actions (1992) 11–97, Section 11.43. See, also, *Granada Invest., Inc. v. DWG Corp.* (C.A.6, 1992), 962 F.2d 1203, 1205; Federal Judicial Center, Manual for Complex Litigation (3 Ed.1995) 238, Section 30.42.

7. This court, now being fully advised in the premises of the parties' Settlement Agreement, and following notice and hearing, finds that the parties' Settlement Agreement is fair. The objection to the settlement lodged by Albert Lloyd and Julia Lloyd is not well taken. None of the claims or issues in this case involved residential properties used solely for rental purposes, nor did the named plaintiffs purport to represent landlords or owners of rental property. The court also finds that the proposed time period for recovery from the Claim Fund—ownership and occupancy in the class census tracts between January 1, 1990 and April 15, 1998—is reasonable. The written comments filed by Ennis Pratcher also do not warrant rejection of the proposed settlement. His comments do not relate to insurance, but rather to a dispute with the city of Toledo, which is not a party to this case. Moreover, there are no preset limits on the amount of recovery eligible claimants may recover from the Claim Fund, as Pratcher seems to assume. The amount of recovery is dependent on the total number of qualified claimants. The court also finds that Salonda Washington failed to file a timely objection to the Settlement Agreement and failed to appear at the hearing either personally or through her attorney. In any event, the comments made by McCarter on behalf of Washington do not warrant disapproval of the Settlement Agreement.

8. The court also finds that plaintiffs' motion for award of attorney fees and costs is well taken and should be granted.

9. This court has jurisdiction to consider and resolve these claims and the parties agree to and request entry of this judgment entry.

## JUDGMENT ENTRY

1. It is ordered that the Settlement Agreement entered into by the parties on April 20, 1998 and attached hereto is fair, reasonable, and adequate.

2. It is ordered that the motion for attorney fees is granted.

3. It is ordered that entry of this judgment entry shall resolve all claims contained in plaintiffs' first amended complaint against Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company (collectively "Nationwide") in this action and all claims that plaintiffs could have alleged against Nationwide under the Ohio Fair Housing Act, based upon Nationwide's policies and practices in the city of Toledo up to and including the date of entry of this judgment entry.

4. It is ordered that this court shall retain jurisdiction over this matter for a period of four years from the date of entry of this judgment entry for the purpose of monitoring the parties' performance under the terms of the Settlement Agreement, which terms are incorporated into and shall be fully enforceable before this court as though specifically set forth in this judgment entry, and for the purpose of entering any orders necessary for the implementation and enforcement of the Settlement Agreement.

5. It is ordered that, in the event that any issue shall hereafter arise concerning implementation of the terms of the Settlement Agreement, the parties have agreed to and shall work cooperatively to resolve any issues that might arise as implementation proceeds, and to petition the Lucas County Common Pleas Court only as to those issues that cannot be resolved through good-faith negotiations. Unless resolution of a particular matter is governed by a specific procedure set forth elsewhere in the Settlement Agreement, any party may identify the issue(s) it believes to be in question and give written notice to the other parties. If the issue is not earlier resolved by informal means, within thirty days after receipt of such notice, the parties agree to meet and confer regarding the issues raised. If the issue remains unresolved after the parties have met and conferred in good faith in an effort to resolve the issue, then the matter may be brought before this court for determination upon the motion of any party.

6. Nationwide is hereby ordered to pay to plaintiffs' counsel the sum of $1,500,000 as and for attorney fees, and the sum of $350,000 as and for costs and litigation expenses incurred in this matter through the date of this judgment entry. Nationwide shall pay these amounts according to a payment schedule agreed to by the parties. Attorney fees and costs incurred by plaintiffs' counsel after February 28, 1998, for monitoring, enforcement, and administration shall be paid from the interest on the Claim Fund as provided by the Settlement Agreement.

7. Four years from entry of this judgment entry, the court shall fully and finally dispose of this case by judgment entry dismissing the case in its entirety with prejudice and without costs.

*Judgment accordingly.*

## APPENDIX A

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into this 20th day of April, 1998, by and between Plaintiffs Toledo Fair Housing Center, Rose Newton, Nellie Edwards, Paulette Hardnette, Charles Taylor, Marion Pearce, Helen Phillips, Wilma Harris, Marie Boyd, Robert and Janice Rivers, and James and Sandra Sutton, and Fair Housing Opportunities of Northwest Ohio, Inc. ("FHONO"), and Defendants Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company (collectively "Nationwide"). The effective date of this Settlement Agreement shall be the date on which the Lucas County Common Pleas Court enters an Agreed Order incorporating therein by reference this Settlement Agreement in its entirety.

### WITNESSETH:

WHEREAS, Plaintiffs have brought this action, *Toledo Fair Housing Center, et al. v. Nationwide Mutual Insurance Company, et al.*, Lucas County Common Pleas Court Civil Action No. 93-1685, pursuant to Ohio's Fair Housing Act, Ohio Revised Code §4112.02(H) and allege in their Complaint that the above Nationwide insurance companies named as defendants (Nationwide) have violated the Act by discriminating on the basis of race and racial composition of the neighborhood in the provision of homeowners insurance;

WHEREAS, Plaintiffs' claims focus on certain Nationwide business practices that allegedly discriminate against homeowners in African-American neighborhoods in the City of Toledo, Ohio;

WHEREAS, Plaintiffs assert that predominantly African-American communities in the City of Toledo, Ohio and their residents have suffered harm as a result of these practices restricting access to Nationwide's homeowners insurance;

WHEREAS, Plaintiffs further allege that Nationwide has engaged in intentional discrimination against homeowners in African-American neighborhoods in the City of Toledo, Ohio by deliberately limiting the company's presence and marketing in African-American neighborhoods;

WHEREAS, FHONO, as the governing body for the Toledo Fair Housing Center, is a real party in interest to this Settlement Agreement;

WHEREAS, FHONO warrants that it is a 501(c)(3) charitable organization;

WHEREAS, Nationwide denies that it has engaged in any form of discrimination in violation of the Ohio Fair Housing Act and affirmatively states that its business practices are and have always been lawful and based on legitimate business considerations;

WHEREAS, Nationwide desires to resolve the claims raised in this litigation in order to facilitate its pursuit of its business objective of expanding its presence and penetration in urban markets;

WHEREAS, there has been no factual finding or adjudication with respect to any matter alleged in or arising out of the Complaint in this case; and

WHEREAS, all parties have indicated a willingness and an intention to resolve their dispute without a trial and to enter into this Settlement Agreement in full and fair compromise of Plaintiffs' claims;

NOW, THEREFORE, in consideration of the foregoing, and of the terms, conditions, and covenants set forth herein, the parties hereby agree as follows:

## I. GENERAL PROVISIONS

### A. Non-admission of Liability

Nationwide's entry into this Settlement Agreement shall not constitute in any manner an admission that any of the business practices challenged by Plaintiffs are unlawful. Consistent with Nationwide's own plans to expand its business throughout the City of Toledo and especially in Toledo's predominantly African-American neighborhoods, and to achieve certainty and finality, Nationwide freely and voluntarily enters into this Settlement Agreement to resolve the claims raised in this litigation. The parties agree that the terms of this Settlement Agreement, and of the Court's Agreed Order providing for continuing jurisdiction to enforce this Settlement Agreement, provide a reasonable means of addressing the material concerns of both Plaintiffs and Nationwide.

### B. Reaffirmation of Nationwide's Commitment to Urban Markets

Through this Settlement Agreement, Nationwide reaffirms its commitment to make its business decisions without regard to race or neighborhood racial composition and to serve all communities in the areas in which it does business. To complement its decision to change its practices, Nationwide has, among other things, devised a comprehensive plan to capture the urban market through focused advertising, increased agency presence in these areas, and community outreach efforts.

### C. Scope of Agreement

Except as otherwise specified below, the terms of this Settlement Agreement shall apply throughout the State of Ohio. For purposes of this Settlement Agreement, the term "homeowners insurance" shall refer to all insurance policies covering owner-occupied dwellings, excluding condominium and mobile home coverage.

194

### D. Agreement Not to Engage in Discrimination

Nationwide, for itself, its officers, directors, employees, contractors, agents, and through them, their employees and successors, hereby agrees to refrain from engaging in any act or practice that unlawfully discriminates on the basis of race or neighborhood racial composition in the provision of homeowners insurance, imposing on the basis of race or neighborhood racial composition different terms or conditions for the availability of homeowners insurance, or making any statement that indicates any preference, limitation, or discrimination with respect to the provision of homeowners insurance based on race or neighborhood racial composition. This prohibition includes, but is not limited to, any use of the racial or ethnic composition of a city, zip code, neighborhood, block, or other geographic area as a factor in any decision regarding the availability, eligibility, underwriting, price, administration, terms, or marketing of homeowners insurance. Nationwide will not reprimand, penalize, or otherwise retaliate in any way against any person who requests or provides information regarding Nationwide's compliance with this Settlement Agreement or who opposes non-compliance.

### E. Date of Announcement of Agreement and Submission of Settlement Terms for Court Approval

It is hereby agreed and understood by and between the parties hereto that the content of their negotiations, the fact that this Settlement Agreement has been reached, and all terms and conditions of this Settlement Agreement shall be maintained in strict confidence by all parties hereto, their employees and agents, and that there shall be no public disclosure of the existence or content of this Settlement Agreement until the parties' joint filing of a Notice of Settlement and Motion to Set Fairness Hearing in the Lucas County Common Pleas Court. It is further understood and agreed

that such Notice of Settlement shall not be filed until after April 15, 1998, and that at the time said Notice of Settlement is filed, the parties will issue a joint statement as described below.

F.  Effective Date of Agreement and Incorporation of Agreement Into Court Order

This Settlement Agreement's effective date shall be the date on which the Lucas County Common Pleas Court, following notice and a fairness hearing, enters an Agreed Order incorporating the terms of this Settlement Agreement, in their entirety, as though set forth fully therein.

II.  AGREED JOINT STATEMENT FOR PUBLIC RELEASE

A.  Date of Filing Notice of Settlement and Motion to Set Fairness Hearing

The parties agree that on April 20, 1998, the parties shall jointly file a Notice of Settlement and Motion to Set Fairness Hearing with respect to this Settlement Agreement and the proposed Agreed Order.

B.  Release of Agreed Joint Statement

At the time that the Notice of Settlement and Motion to Set Fairness Hearing are jointly filed, the parties also shall jointly issue an agreed statement, in the form attached hereto as Exhibit 1.

III.  NATIONWIDE'S COMPREHENSIVE PLAN TO INCREASE SERVICES TO URBAN COMMUNITIES IN OHIO

A.  Criteria for Insurance Coverage Eligibility

1.  Underwriting Standards Changes and Policy Forms. Nationwide warrants that effective April 15, 1997, Nationwide changed its underwriting standards in Ohio to eliminate all references to and the use of the age of a dwelling and market value as eligibility criteria to obtain any

Nationwide homeowners policy. Nationwide agrees that during the term of this Settlement Agreement it will not use the age of a dwelling or its minimum value as an underwriting or eligibility criteria. Nationwide further warrants that it no longer considers, and agrees that during the term of this Settlement Agreement it will not consider, the relationship between a home's market value and its calculated replacement cost in deciding eligibility for insurance. During the term of this Settlement Agreement, Nationwide agrees that each customer whose dwelling passes Nationwide's dwelling condition inspection of the dwelling interior and exterior, or such other objective, non-discriminatory procedures as Nationwide shall use to determine dwelling condition, and who otherwise satisfies Nationwide's underwriting guidelines, will be given the option of selecting replacement cost coverage (guaranteed or non-guaranteed) or repair cost coverage (i.e. replace with conventional materials and construction methods) on the dwelling and/or contents. Nationwide further agrees that on or before April 15, 1999, customers will also be given the option of purchasing replacement cost coverage with policy limits valued at less than 100% of the replacement cost of the home, such as at 75% of the replacement cost (the "value percentage"). Nationwide will encourage its agents to suggest to replacement cost customers that they to insure to full replacement cost of their dwellings. For all such policies, in the event that the customer files a claim, Nationwide does not now and will not during the term of this Settlement Agreement impose a coinsurance penalty on a partial loss, *i.e.*, settle the claim *pro rata* by multiplying the claim amount by the value percentage. Rather, the claim shall be settled under the same standards as are applied to policies valued at 100% of the home's replacement cost, up to the limits of the policy.

2. Age of Home and Systems, Market Value Not Considered. Nationwide warrants that it does not now, and agrees that it will not during the term of this Settlement

Agreement, consider in any way the age or market value of a home as a criterion for eligibility for homeowners insurance coverage or for eligibility for certain types of coverage. Further, Nationwide does not, and will not during the term of this Settlement Agreement, consider the relationship between a home's market value and replacement cost in deciding eligibility for insurance coverage or the types of coverage that may be available. In addition, with respect to each home's mechanical systems, Nationwide currently considers, and throughout the term of this Settlement Agreement will consider, only the condition of a home's plumbing, wiring, and other mechanical systems as revealed by inspections or such other objective procedures as Nationwide shall use to establish the actual condition of these systems, and not the age of these systems, in determining eligibility for homeowners insurance. Consistent with the above, Nationwide warrants that it already has revised its homeowners insurance eligibility criteria and underwriting guidelines within the State of Ohio with regard to electrical service amperage, knob and tube and aluminum wiring, and roof type.

3. Use of Credit History.

a. Nationwide agrees to provide to Plaintiffs' counsel on an annual basis during the term of this Settlement Agreement records identifying all homeowners insurance applications in the City of Toledo which were declined in whole or in part based upon the credit history of the insured, including the name(s) and address of the applicant(s), the address of the property to be insured, the type of insurance applied for, the complete list of reasons why the application was denied, and the documents containing the credit information upon which the decision was based.

b. Nationwide agrees to comply fully with the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*

Plaintiffs' counsel agrees that with respect to all records produced pursuant to this Settlement Agreement, he shall comply with the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 *et seq.*

4.    Use of Adjacent Properties or Subjective Standards as Insurance Eligibility Criteria. In determining whether a property is eligible for insurance, Nationwide does not, and agrees that it will not during the term of this Settlement Agreement, consider whether an adjacent property is vacant or substandard, unless the adjacent use is revealed by an inspection to present a specific hazard to the property seeking insurance which would provide a basis for a claim. Nationwide warrants that it already has eliminated, and agrees that it will not reintroduce during the term of this Settlement Agreement, any homeowners insurance underwriting guideline in the State of Ohio which might have indicated that an adjacent property was of high hazard on the sole basis that it was abandoned. Further, Nationwide warrants that it already has deleted from its homeowners insurance underwriting guidelines in the State of Ohio, and will not reintroduce during the term of this Settlement Agreement, subjective, vague underwriting criteria such as "pride of ownership" and "good housekeeping."

5.    Notice Letters to Rejected Applicants. Beginning 180 days following the effective date of this Settlement Agreement, and thereafter throughout the term of this Settlement Agreement, if Nationwide determines: (a) that any home in the City of Toledo does not qualify for Nationwide homeowners insurance; or (b) that an existing homeowners insurance policy in the City of Toledo must be canceled or not renewed (for reasons other than non-payment of premium by the policyholder), Nationwide will notify the prospective or current customer(s) by letter which fully explains the reason(s) for the adverse determination consistent with federal and/or state laws.

Nationwide will also determine what repairs, if any, can be made to render the property insurable or eligible for insurance. If such repairs are possible, Nationwide will additionally inform the prospective or current customer(s) by letter that they may be eligible for insurance if the specified repairs are made within a reasonable period of time (at least 90 days). Nationwide will not guarantee or be required to keep coverage in effect pending notification that the repairs have been made. The letter sent to a customer pursuant to this paragraph will include the name and telephone number of a local Nationwide agent and/or the underwriter assigned to the Toledo area and will encourage the customer to contact Nationwide if the customer needs more time to make the necessary repairs, disagrees with the determination made, or has any questions.

B.  Criteria For Homeowners Insurance Coverage Pricing.

1.  Excluded Criteria. In setting homeowners insurance prices, Nationwide will not consider in any way the age of the home (except (a) for earthquake coverage; or (b) as necessary to make available new home credits), the market value of the home, the relationship between the home's market value and replacement cost, the credit history of the prospective insurance customers, nor characteristics that are unfairly discriminatory and that are not reasonably relevant to the insurance risk. In particular, Nationwide will not consider in setting a price for insurance coverage the race or ethnicity of the homeowner or the racial composition of the area in which the homeowner resides.

2.  Designation of Territories. Nationwide will not define geographic rating territories in such a manner as to discriminate on the basis of race or neighborhood racial composition. Nationwide's designation of rating territories will be based upon non-discriminatory

loss experience criteria, and not on racial or ethnic factors or the racial composition of geographic areas, as permitted and/or required and/or approved by state insurance regulators.

### C. Company Presence in Urban Areas

1. General. Nationwide agrees to make affirmative efforts to increase its presence in predominantly African-American neighborhoods within the City of Toledo as well as other Ohio cities. To achieve this objective, Nationwide agrees that within 12 months of the effective date of this Settlement Agreement it will place an agent in an area of Toledo with a significant African-American presence. In addition, Nationwide will encourage agents located outside these areas to insure properties located in these areas.

2. Notice to Employees and Agents. Nationwide warrants that it has communicated to its employees and agents that have any responsibilities relating to Nationwide's homeowners insurance business, its affirmative desire to increase the number of policies written and agencies located in predominantly African-American areas in Ohio. Nationwide warrants that each sales agent within the State of Ohio has received from Nationwide a written letter or memorandum stating this company business goal and explaining that the company encourages this market penetration. Nationwide further agrees that all new agents will be provided with a substantially similar written notification within 90 days after their hire or contract date.

3. Efforts to Increase Agency Presence in Urban Areas. Nationwide will use reasonable efforts to recruit and retain agents to locate in and serve predominantly African-American neighborhoods in urban areas in the State of Ohio.

4. Reassignment of Files of Terminated Agents. If an agent with an office in a predominantly African-American area or with predominantly African-American customers leaves

Nationwide for any reason, Nationwide will make reasonable efforts to reassign the accounts of that agent to the agent or agents closest to the former agent's office.

**D.    Advertising and Marketing.**

1.    Use of Marketing Firm. Nationwide warrants that it previously contracted with an established market research firm, to determine and implement effective advertising strategies in minority communities.

2.    Brochures. Nationwide will develop a brochure describing its homeowners policy forms and coverage options. This brochure will specifically state Nationwide's interest in serving African-American communities and its commitment to equal opportunities for insurance coverage. Nationwide will make all reasonable efforts to distribute this brochure through such channels as real estate and housing professionals serving the African-American community, church and community groups, and retail outlets in predominantly African-American areas. Within 180 days of the effective date of this Settlement Agreement, copies of these brochures will also be made available for distribution at Nationwide's Toledo metropolitan area agents' offices and at the offices of the Toledo Fair Housing Center. Nationwide will ensure that these outlets receive a sufficient supply of the brochures to distribute to all interested people.

3.    Equal Opportunity Notice: Print Media. Nationwide warrants that all of Nationwide's current print advertising for homeowners insurance now contains, and that all print advertising placed by Nationwide within the State of Ohio during the term of this Settlement Agreement will contain, an equal housing opportunity logotype, statement, or slogan as described in the Fair Housing Advertising regulations of the United States Department of Housing and Urban Development, 24 C.F.R. Part 109 (1995). Nationwide warrants that it has followed and agrees that

it will continue to follow throughout the term of this Settlement Agreement the guidance of Tables I and II of Appendix I to 24 C.F.R. Part 109 (1995) in selecting appropriate type size as well as a slogan, statement, logotype, and other standards for such advertising.

4.     Equal Opportunity Notice: Radio and TV.     Nationwide agrees that, throughout the term of this Settlement Agreement, in all Nationwide television and radio advertisements and promotions for homeowners insurance within the State of Ohio, except radio ads of fifteen seconds or less in duration, the statement: "Equal Housing Opportunity" will be stated audibly. In the alternative, if a television advertisement or promotion for homeowners insurance includes a written statement appearing on the screen, the nondiscrimination statement may so appear; the nondiscrimination statement must continue to meet the requirements set forth in Appendix I to 24 C.F.R. Part 109 (1995) and must appear on the screen as long as any other written statement appears.

5.     Human Models.     Any Nationwide advertising that uses human models in videos, photographs, drawings or other graphic techniques will reasonably represent African-Americans as well as white persons in such a manner as to indicate to the general public that Nationwide's products are available on a racially nondiscriminatory basis.

6.     Marketing Plans.     During the term of this Settlement Agreement, Nationwide agrees to eliminate the use of Local Area Marketing Plans and reports and associated maps throughout the State of Ohio. All of Nationwide's marketing plans and guidelines in the State of Ohio shall reflect Nationwide's commitment to equitably serve predominantly African-American communities and urban areas throughout the State of Ohio.

7. <u>Targeted Print Advertising.</u> During the first two years following the effective date of this Settlement Agreement, Nationwide agrees to place a total of four one-quarter (1/4) page advertisements in the Toledo Journal, highlighting Nationwide's homeowners insurance and inviting persons to contact their local Nationwide agent for detailed information.

## IV. TRAINING

### A. Nationwide Training of Employees and Agents

Nationwide agrees that it will train its employees and agents in the State of Ohio generally and specifically within the City of Toledo with respect to fair and equal homeowners insurance business practices.

### B. Toledo Fair Housing Center Training of Nationwide Employees

Within 180 days of the effective date of this Settlement Agreement, the Toledo Fair Housing Center shall conduct fair housing training for selected employees and officials within Ohio Operations of Nationwide and having responsibility for the City of Toledo. The training shall be at least 4 hours in duration and shall be conducted at a time and place that is mutually convenient to the parties. The Toledo Fair Housing Center shall provide this training, including all written materials, at no cost to Nationwide. Nationwide's Associate Vice President of Urban Markets, in consultation with the Executive Director of the Toledo Fair Housing Center, shall select those employees and officials or categories of employees and officials who will attend the training. This training, at a minimum, shall stress fair housing concepts, the selling of homeowners insurance policies without regard to race and without regard to the racial/ethnic composition of the neighborhood in which the insured dwelling is located, and the opportunities in urban markets.

204

## V. TESTING

### A. Nationwide's Testing Program: Review and Input by Plaintiff's Counsel

Nationwide warrants that it has contracted with a testing organization, acceptable to Plaintiffs' counsel, for the purpose of conducting matched pair tests of Nationwide agents in various areas of the United States, including the State of Ohio. Nationwide agrees to direct this testing organization to provide to Plaintiffs' counsel upon request detailed information about the design and content of the testing program, which information is not known to Nationwide and shall not be released to any third party. Nationwide further agrees that it will direct the testing organization to review and consider written comments from Plaintiffs' counsel with respect to the design and content of the testing program.

### B. Nationwide's Inclusion of Toledo in Testing Program

Nationwide agrees that it will include the City of Toledo on its list of ten cities in which testing shall be conducted and that it will direct the testing organization that tests must be conducted in Toledo some time during the next three calendar years.

### C. Test Results: Self-Monitoring and Production to Plaintiffs' Counsel

Nationwide will provide to Plaintiffs' counsel copies of all test results relating to the City of Toledo which Nationwide receives from the testing organization. It is understood and agreed that these tests are for self-monitoring purposes only, and that all results reported to Plaintiffs' counsel will be kept confidential, and will not be used by Plaintiffs or their counsel for any purpose other than to monitor Nationwide's compliance with this section of the parties' Settlement Agreement.

## VI. COMPENSATION

### A. Establishment and Purpose of Claim Fund

1. <u>Creation of Claim Fund.</u> Within thirty (30) days following the effective date of this Settlement Agreement, Nationwide shall deposit in an interest-bearing account designated by counsel for Plaintiffs the total sum of Two Million Dollars ($2,000,000.00) (the "Claim Fund") to be used for individual compensation as set forth herein.

2. <u>Purpose of Claim Fund.</u> The principal of the Claim Fund shall be used to pay the costs of administration of the Claim Fund and to provide compensation to individually named plaintiffs and to qualified class members. Interest earned on the Claim Fund shall be used to pay the reasonable attorneys' fees, costs and expenses incurred by Plaintiffs' counsel, during the period beginning March 1, 1998 and continuing through the term of this Settlement Agreement, for assisting with the selection of a Claim Administrator and in the administration and processing of claims, and for monitoring compliance with the terms of this Settlement Agreement. Plaintiffs' counsel shall file with the Court on a quarterly basis a detailed statement authenticating such fees, costs, and expenses. The Claim Administrator shall not be authorized to make any payments to Plaintiffs' counsel for either fees or expenses until such detailed statements have been approved by the Court for payment.

### B. Selection and Duties of Claim Administrator

1. <u>Selection of the Claim Administrator.</u> Within one hundred and twenty (120) days following the effective date of this Settlement Agreement, counsel for Plaintiffs and Nationwide shall jointly select an individual or company to serve as Claim Administrator. In order to select the Claim Administrator, counsel for Plaintiffs and Nationwide shall first jointly prepare a Request for

Proposal setting forth in detail the anticipated duties of the Claim Administrator and describing the overall claim process. That Request for Proposal will then be sent by Plaintiffs' counsel to a minimum of three (3) persons or companies experienced in the administration of class funds of the magnitude involved in this case. Counsel for Plaintiffs, in consultation with Nationwide, shall then select from those persons or companies actually submitting proposals that person or company best suited to the performance of the duties expected of the Claim Administrator in this case. The parties agree that while a substantial objective of the selection process shall be to minimize the cost of claim administration, cost will not be the only consideration in the selection process, and that due consideration shall also be given to the person or company's experience, and to whether the person or company to be selected has knowledge of both homeowners insurance and civil rights issues.

2. Duties of the Claim Administrator.

a. The Claim Administrator, with the input and assistance of counsel for Plaintiffs and Nationwide, shall be responsible for the creation of the "Proof of Claim" form. At a minimum, the Proof of Claim form shall provide for the submission of documentary materials, if any, supporting each claim and shall contain sufficient detail to permit the Claim Administrator to make reasonable determinations of a claimant's eligibility to recover from the Claim Fund. The Proof of Claim forms shall require each claimant to swear or declare under penalty of perjury that the information contained therein is truthful.

b. The Claim Administrator shall process the claims of all class members as provided herein and in the contract to be entered into between the Claim Administrator and counsel for Plaintiffs.

c.  The Claim Administrator shall pay all reasonable expenses of the Claim Fund and shall be fully responsible for the distribution of all principal amounts from the Claim Fund, including the payment of all applicable taxes. The Claim Administrator may sub-contract or delegate its duties only to the extent so provided in the contract to be entered into with the Claim Administrator.

d.  The Claim Administrator, on a quarterly basis, shall submit bills itemizing expenses and the cost of its services to counsel for Plaintiffs, who shall be authorized to approve such bills for payment and to direct payment of these bills from the principal of the Claim Fund.

C.  **Eligibility and Procedure for Recovery from Claim Fund**

1.  <u>Categories of Eligible Claimants.</u> There shall be four categories of eligible claimants for recovery from the Claim Fund. These are:  individually named plaintiffs (other than the Toledo Fair Housing Center); "persons denied insurance from Nationwide"; "persons receiving repair cost homeowners policies from Nationwide"; and "persons receiving repair cost homeowners policies from Nationwide who suffered underinsured losses."

a.  "Persons denied insurance from Nationwide" shall include those claimants who establish to the satisfaction of the Claim Administrator (1) that between January 1, 1990 and April 15, 1998, the claimant was an owner-occupant of a 1 to 4 family dwelling in a designated census tract in the City of Toledo; (2) that at some point during that time period, claimant either (i) applied for Nationwide homeowners insurance but that Nationwide rejected the application or canceled the insurance within sixty (60) days of issuance, or (ii) inquired of a Nationwide agent about obtaining homeowners insurance but did not obtain insurance from Nationwide; or (iii) inquired of a Nationwide agent about obtaining homeowners insurance but did not obtain insurance from Nationwide because the agent told the claimant that he or she could not obtain such insurance with

Nationwide or the agent referred the claimant to another company or to the Ohio FAIR Plan; or (iv) obtained Nationwide homeowners insurance for some term but was later denied such insurance because Nationwide canceled or non-renewed the policy; or (v) attempted to obtain an Option J endorsement on homeowners insurance from Nationwide but were denied by Nationwide; and (3) that the dwelling (or dwellings) with respect to which the claimant seeks recovery was (were), at all relevant times, insurable risk(s).

b.      "Persons receiving repair cost homeowners policies from Nationwide" shall include those claimants who establish to the satisfaction of the Claim Administrator (1) that between January 1, 1990 and April 15, 1998, the claimant was an owner-occupant of a 1 to 4 family dwelling in a designated census tract in the City of Toledo; (2) that at some point during that time period, claimant (i) received a homeowners insurance policy from Nationwide which did not provide insurance on a replacement cost basis, and (ii) would have purchased a replacement cost policy if it had been offered; and (3) that the dwelling (or dwellings) with respect to which the claimant seeks recovery was (were), at all relevant times, insurable risk(s).

c.      "Persons receiving repair cost homeowners policies from Nationwide who suffered underinsured losses" shall include those claimants who establish to the satisfaction of the Claim Administrator (1) that between January 1, 1990 and April 15, 1998, the claimant was an owner-occupant of a 1 to 4 family dwelling in a designated census tract in the City of Toledo; (2) that at some point during that time period, claimant (i) received a homeowners insurance policy from Nationwide which did not provide insurance on a replacement cost basis, (ii) would have purchased a replacement cost policy if it had been offered, and (iii) suffered an insured loss under Coverage A (dwelling coverage) which exceeded the claimant's Coverage A limit; and (3) that the dwelling (or

dwellings) with respect to which the claimant seeks recovery was (were) at all relevant times, insurable risk(s).

d.   For purposes of this section, the term "designated census tract" shall include the following predominantly African-American census tracts: 8, 14, 15, 16, 19, 21, 22, 23, 24.02, 25, 26, 28, 31, 32, 33, 34, 35, 36, 37, 66.

2.   Claim Procedure: Duties of the Claim Administrator.

a.   The Claim Administrator shall distribute and make available to class members "Proof of Claim" forms.

b.   Claimants shall complete and return to the Claim Administrator all Proof of Claim forms.

c.   The Claim Administrator shall process, evaluate, and make initial determinations with respect to all claims. This step may include one or more repeat contacts with the claimants and/or contact with Nationwide, or current or former Nationwide agents for the purpose of obtaining additional information.

d.   All claimant files shall be submitted by the Claim Administrator to Nationwide which may, but is not required to, review its own records and, where appropriate make contact with current or former Nationwide agents, to determine the existence of additional information which may be material to the decision of the Claim Administrator. At the conclusion of this period, Nationwide shall return all claimant files to the Claim Administrator. Nationwide may also at this time provide the Claim Administrator with additional material information relating to any claim or claimant.

e.   The Claim Administrator shall make final determinations with respect to claimant eligibility for recovery and, in the case of persons receiving repair cost insurance from Nationwide

who suffered underinsured losses, the Claim Administrator shall also make final determinations with respect to the amount of the underinsured loss. The Claim Administrator shall also forward all claimant files (including information, if any, provided by Nationwide), with final determinations, to the Class Claim Review Committee.

  f.  The Class Claim Review Committee shall review the final determinations of the Claim Administrator and shall have the authority to either affirm or reverse those determinations. Decisions of the Class Claim Review Committee and all claimant file materials shall be returned to the Claim Administrator. The decision of the Class Claim Review Committee shall be final and shall be binding upon the Claim Administrator in the distribution of monies from the Claim Fund.

  g.  The Claim Administrator shall distribute payments in accordance with the provisions of this Settlement Agreement to those claimants found eligible to recover as persons with repair cost insurance from Nationwide who suffered underinsured losses.

  h.  The Claim Administrator shall distribute payments in accordance with the provisions of this Settlement Agreement to all remaining claimants found eligible to recover hereunder.

  i.  The Claim Administrator shall to prepare and submit to counsel for Plaintiffs a final accounting of the distribution of all monies paid to claimants and otherwise from the Claim Fund.

  **D.**  **Selection, Duties, and Compensation of Class Claim Review Committee**

  1.  Selection of Class Claim Review Committee. It shall be the responsibility of counsel for Plaintiffs to appoint not more than 12 nor fewer than 6 persons to serve as the "Class Claim Review Committee." The Class Claim Review Committee shall act as a consultant to, and shall be subject to removal for dereliction of duties by, Plaintiffs' counsel.

2.      <u>Duties of the Class Claim Review Committee.</u> It shall be the responsibility of the Class Claim Review Committee to make final and binding determinations with respect to each claimant's eligibility to recover from the Claim Fund and, with respect to those persons who received repair cost homeowners policies from Nationwide and suffered underinsured losses, to make the final and binding determination as to the amount of the underinsured loss. Provided, that in the event that any Class Claim Review Committee member shall also be a claimant, said member shall recuse himself or herself from consideration of his or her own claim.

3.      <u>Compensation of the Class Claim Review Committee.</u> The Class Claim Review Committee members shall be compensated by Plaintiffs' counsel in such amounts and at such times as Plaintiffs' counsel shall determine to be appropriate. All members shall receive equal compensation amounts. Monies paid by Plaintiffs' counsel to Class Claim Review Committee members shall be treated as attorneys fees, costs and expenses compensable from the interest earned on the Claim Fund as provided in Section VI(A)(2), above.

E.      **Payments to Individually Named Plaintiffs: Timing and Amount**

1.      <u>Time of Payment to Individually Named Plaintiffs.</u> Payments to the individually named plaintiffs shall be made by the Claim Administrator from the Claim Fund within thirty (30) days of appointment of the Claim Administrator.

2.      <u>Amount of Payments to Individually Named Plaintiffs.</u>

a.      <u>Payments to Individually Named Tester Plaintiffs.</u>

The Claim Administrator shall pay to each of the following named tester plaintiffs the sum of Ten Thousand Dollars ($10,000.00): Nellie Edwards; Paulette Hardnette; Charles Taylor; Rose Newton; and Marion Pearce. Upon receipt of these payments, each of the individually named

tester plaintiffs shall execute a General Release in favor of Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company releasing all claims brought by such individual on his or her own behalf, or which could have been brought on his or her own behalf in this litigation.

  b.  Payments to Individually Named Non-Tester Plaintiffs:

    The Claim Administrator shall pay to each of the following named plaintiffs or couples the sum of Twenty Thousand Dollars ($20,000.00): Helen Phillips; Wilma Harris; Robert and Janice Rivers; and James and Sandra Sutton. The Claim Administrator shall also pay the sum of Twenty Thousand Dollars ($20,000.00) to any individually named non-tester plaintiff not specifically named in this paragraph. Upon receipt of the foregoing payments, each of the individually named non-tester plaintiffs shall execute a General Release in favor of Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, releasing all claims brought by such individual on his or her own behalf, or which could have been brought on his or her own behalf in this litigation. Execution of such a General Release shall not bar or preclude any individually named non-tester plaintiff who otherwise meets the eligibility requirements set forth herein from also recovering from the Claim Fund as a class member.

  F.  **Class Member Compensation: Amounts and Payment Priority**

    1.  Persons Receiving Repair Cost Homeowners Policies From Nationwide Who Suffered Underinsured Losses. Claimants deemed eligible to recover from the Claim Fund as persons receiving repair cost homeowners policies from Nationwide who suffered underinsured losses shall receive the lesser amount of (1) the actual amount by which their Coverage A loss exceeded the Coverage A limit on their repair cost policy, or (2) Twenty Thousand Dollars ($20,000.00). These claimants shall have priority over other class members entitled to recover from

the Claim Fund and their claims shall be paid before the determination of the *pro rata* shares provided in sub-paragraph (2), below. An individual who recovers under this sub-paragraph shall not be entitled to recover under sub-paragraph 2.

2. <u>Persons Denied Insurance From Nationwide and Persons Who Received Repair Cost Homeowners Policies From Nationwide.</u> All claimants deemed eligible to recover from the Claim Fund as either "persons denied insurance from Nationwide" or "persons who received repair cost homeowners policies from Nationwide" shall receive payments in an amount to be determined by the Claim Administrator as follows: the Claim Administrator shall divide equally among all such eligible claimants the remainder of the Claim Fund after payment of (1) amounts owing under this Settlement Agreement to the individually named plaintiffs; (2) amounts owing under this Settlement Agreement to "persons receiving repair cost homeowners policies from Nationwide who suffered underinsured losses"; and (3) the costs of administration of the Claim Fund.

G. **Direct Contributions for Community Investment**

Over the four year term of this Settlement Agreement, Nationwide will provide a total of Five Hundred Thousand Dollars ($500,000.00) to provide assistance for low and moderate income home buyers seeking to purchase and/or repair single family owner-occupied homes in predominantly African-American neighborhoods in the City of Toledo. This financial assistance program shall be administered by either the Neighborhood Reinvestment Corporation or the Local Initiative Support Corporation, or, subject to the agreement of the parties, by some other qualified organization. The funds shall be used to provide one or more of the following types of financial assistance: down payment assistance, closing cost assistance, second mortgages, purchase/rehab

loans, below market interest rate loans, and home ownership counseling. The particular types of assistance shall be chosen by the administering organization based upon its experience in and knowledge of the area, and its assessment of the types of assistance which would best carry out the purposes of this Settlement Agreement.

## H. Creation of Low Interest Loan Fund

Within sixty (60) days of the effective date of this Settlement Agreement, counsel for Plaintiffs shall identify to Nationwide a financially responsible depository institution within the City of Toledo which has agreed to administer a below market interest rate loan fund in accordance with the provisions of this Settlement Agreement. Within twenty (20) days thereafter, Nationwide shall pay to counsel for Plaintiffs, as trustee for the Plaintiff Class, the sum of Five Hundred Thousand Dollars ($500,000.00), which Plaintiffs' counsel, as trustee, shall deposit on behalf of the Plaintiff Class for a term of not less than five years, subject to an express requirement that the depository institution shall, in turn, create and administer a loan program to provide to class members below market interest rate loans for any dwelling-related purpose. No class member shall be eligible to receive more than one loan. The depository institution, in conjunction with counsel for Plaintiffs, will develop any necessary application materials and procedures. All interest accruing on the term deposit shall be used to pay the administrative costs of this loan program. At the expiration of the deposit term, counsel for Plaintiffs shall withdraw the original principal amount of Five Hundred Thousand Dollars ($500,000.00) and that money shall be donated to the Local Initiative Support Corporation or such other qualified substantially equivalent organization or organizations as counsel for Plaintiffs may select, provided that a condition of such organization or organizations' receipt of

such monies shall be that the funds shall be used for community development purposes within Toledo's African-American neighborhoods.

### I. Payment to FHONO

Nationwide agrees that within thirty (30) days of the effective date of this Settlement Agreement, it shall pay to Fair Housing Opportunities of Northwest Ohio, Inc., a 501(c)(3) charitable corporation, the sum of Five Hundred Thousand Dollars ($500,000.00), which sum shall be used for fair housing education and outreach activities in Northwest Ohio.

### J. Miscellaneous Compensation Provisions

1. Only one claim may be submitted with respect to any particular dwelling unit regardless of whether that dwelling unit was held by a single owner or was held in joint ownership. Persons who are or were owner-occupants of more than one eligible property may submit claims for each eligible property, and successive property owner-occupants may each submit claims for the same property provided that each such household meets the eligibility requirements of the appropriate category and are not related by marriage. If the property was owned by one or more persons who no longer reside in the same household for reasons such as divorce or legal separation, each person will be paid in proportion to that person's share in the ownership of the dwelling with respect to which the claim is made, or in accordance with any legal provisions of proceeds of property.

2. At the time that the Claim Administrator makes any payment from the Claim Fund, the Claim Administrator shall provide Nationwide with the names, addresses, and telephone numbers of each claimant so that the company can discuss with that person his/her future interest in purchasing Nationwide homeowners insurance. Counsel for Plaintiffs will make their reasonable

efforts to encourage claimants to pursue the purchase of Nationwide insurance policies to help fulfill the objectives of this Settlement Agreement.

3. Plaintiffs' counsel will provide any assistance necessary for the completion of Proof of Claim forms.

4. Except as otherwise provided herein, Nationwide Insurance Enterprise companies, including but not limited to Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, their affiliates, officers, directors, employees, agents, attorneys, assigns and successors shall have no duty, obligation, or liability with respect to any determination of a person's eligibility for any form of relief under this Agreement or for decisions as to the amounts awarded or for any aspect of the relief provided in this part of the Settlement Agreement.

K. **Attorneys Fees and Costs**

Nationwide shall pay the reasonable attorneys fees and expenses of Plaintiffs' counsel through the effective date of this Settlement Agreement as determined by the Court. Except as otherwise provided in this Settlement Agreement, all fees and expenses of Plaintiffs' counsel shall be paid solely by Nationwide and no portion shall be paid by any class member or taken from the principal of the Claim Fund.

## VII. REPORTING AND RECORDS

A. **Reporting**

1. Nationwide will report to Plaintiffs' counsel on an annual basis for the period of this Settlement Agreement the steps it has taken to fulfill those obligations under this Settlement Agreement which relate to activities in the City of Toledo or for the benefit of the plaintiff class.

The first such report shall be due six (6) months following the effective date of this Settlement Agreement.

       2.     Nationwide shall also provide to Plaintiffs' counsel during the term of this Settlement Agreement copies of any rate or form filings it submits to the Ohio Department of Insurance relating to its homeowners insurance business.

**B.    Records**

Nationwide shall provide to counsel for Plaintiffs, upon reasonable written request, the results or reports generated by reasonable inquiries prepared by Plaintiffs' counsel, directed to Nationwide's Electronic Data Gathering System.

**C.    Addresses for Notice and Reports**

Copies of all notices, correspondence, reports, or documents required to be provided by one party to the other under this Settlement Agreement will be mailed to the following addresses:

Counsel for Plaintiffs:
Stephen M. Dane
Cooper, Walinski & Cramer
900 Adams Street
Toledo, OH 43624

Counsel for Nationwide:
Jeffrey S. Goldman
Fox and Grove, Chartered
311 South Wacker Drive
Suite 6200
Chicago, IL 60606-6622

## VIII. RESOLUTION AND RELEASE OF CLAIMS

### A. Resolution of the Plaintiffs' Claims Against Nationwide

Execution of this Settlement Agreement will resolve all claims in the Plaintiffs' First Amended Complaint against Nationwide in this action pursuant to Ohio's Fair Housing Act, O.R.C. §4112.02(H), and all claims that could have been alleged by the Plaintiffs against Nationwide based upon Nationwide's practices up to and including the effective date of this Settlement Agreement.

### B. Release of Claims Against Nationwide

1. Fair Housing Opportunities of Northwest Ohio, Inc., for and on behalf of itself, its subsidiaries, affiliates, assigns, and successors, hereby releases all Nationwide Insurance Enterprise companies, including but not limited to Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, their affiliates, officers, directors, employees, agents, attorneys, assigns and successors (collectively "Nationwide") of and from all claims, charges, or causes of action: (1) concerning or relating in any way to Nationwide's homeowners insurance policies and business practices, including but not limited to policies or practices with respect to the availability, eligibility, underwriting, pricing, administration, terms and conditions, or marketing, within the State of Ohio; (2) which arise or are alleged to have arisen on or before the effective date of this Settlement Agreement; and (3) which are or could have been raised in the litigation captioned *Toledo Fair Housing Center, et al. v. Nationwide Mutual Insurance Company, et al.*, Lucas County Common Pleas Court Civil Action No. 93-1685, including without limitation all actions arising or alleged to arise under the Ohio Civil Rights Act generally, the Ohio Fair Housing Act (Ohio Revised Code Section 4112.02(H)), the Ohio Insurance Code, the federal Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act Amendments Act of 1988, 42 U.S.C.

§ 3601, *et seq.*), 42 U.S.C. § 1981, and all statutory or common law claims, including all claims for attorneys fees and costs.

2.     Toledo Fair Housing Center, for and on behalf of itself, its subsidiaries, affiliates, assigns, and successors, hereby releases all Nationwide Insurance Enterprise companies, including but not limited to Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, their affiliates, officers, directors, employees, agents, attorneys, assigns and successors (collectively "Nationwide") of and from all claims, charges, or causes of action: (1) concerning or relating in any way to Nationwide's homeowners insurance policies and business practices, including but not limited to policies or practices with respect to the availability, eligibility, underwriting, pricing, administration, terms and conditions, or marketing, within the State of Ohio; (2) which arise or are alleged to have arisen on or before the effective date of this Settlement Agreement; and (3) which are or could have been raised in the litigation captioned *Toledo Fair Housing Center, et al. v. Nationwide Mutual Insurance Company, et al.*, Lucas County Common Pleas Court Civil Action No. 93-1685, including without limitation all actions arising or alleged to arise under the Ohio Civil Rights Act generally, the Ohio Fair Housing Act (Ohio Revised Code Section 4112.02(H)), the Ohio Insurance Code, the federal Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.*), 42 U.S.C. § 1981, and all statutory or common law claims, including all claims for attorneys fees and costs.

C.     Covenants Not to Sue

1.     Fair Housing Opportunities of Northwest Ohio, Inc., for and on behalf of itself, its subsidiaries, affiliates, assigns, and successors, hereby covenants that for the duration of

**220**

this Settlement Agreement, it shall not to sue any Nationwide Insurance Enterprise companies, including but not limited to Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, their affiliates, officers, directors, employees, agents, attorneys, assigns and successors (collectively "Nationwide") with respect to any claims, charges, or causes of action: (1) concerning or relating in any way to Nationwide's homeowners insurance policies and business practices, including but not limited to policies or practices with respect to the availability, eligibility, underwriting, pricing, administration, terms and conditions, or marketing, within the State of Ohio; (2) which arise or are alleged to have arisen on or before the effective date of this Settlement Agreement; and (3) which are or could have been raised in the litigation captioned *Toledo Fair Housing Center, et al. v. Nationwide Mutual Insurance Company, et al.*, Lucas County Common Pleas Court Civil Action No. 93-1685, including without limitation all actions arising or alleged to arise under the Ohio Civil Rights Act generally, the Ohio Fair Housing Act (Ohio Revised Code Section 4112.02(H)), the Ohio Insurance Code, the federal Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.*), 42 U.S.C. § 1981, and all statutory or common law claims, including all claims for attorneys fees and costs.

2.      Toledo Fair Housing Center, for and on behalf of itself, its subsidiaries, affiliates, assigns, and successors, hereby covenants that for the duration of this Settlement Agreement, it shall not to sue any Nationwide Insurance Enterprise companies, including but not limited to Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, their affiliates, officers, directors, employees, agents, attorneys, assigns and successors (collectively "Nationwide") with respect to any claims, charges, or causes of action: (1) concerning or relating

in any way to Nationwide's homeowners insurance policies and business practices, including but not limited to policies or practices with respect to the availability, eligibility, underwriting, pricing, administration, terms and conditions, or marketing, within the State of Ohio; (2) which arise or are alleged to have arisen on or before the effective date of this Settlement Agreement; and (3) which are or could have been raised in the litigation captioned *Toledo Fair Housing Center, et al. v. Nationwide Mutual Insurance Company, et al.*, Lucas County Common Pleas Court Civil Action No. 93-1685, including without limitation all actions arising or alleged to arise under the Ohio Civil Rights Act generally, the Ohio Fair Housing Act (Ohio Revised Code Section 4112.02(H)), the Ohio Insurance Code, the federal Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.*), 42 U.S.C. § 1981, and all statutory or common law claims, including all claims for attorneys fees and costs.

ENTERED INTO THIS 20ᵗʰ DAY OF APRIL, 1998. .

TOLEDO FAIR HOUSING CENTER

BY:_____

FAIR HOUSING OPPORTUNITIES
OF NORTHWEST OHIO, INC.

BY: _____

NELLIE EDWARDS

BY: _____

NATIONWIDE MUTUAL INSURANCE COMPANY
AND NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY

BY: *James A. Taylor*
James A. Taylor, Senior Vice President
Property Casualty Operations

MARIE BOYD

BY: _____

PAULETTE HARDNETT

BY: _____

in any way to Nationwide's homeowners insurance policies and business practices, including but not limited to policies or practices with respect to the availability, eligibility, underwriting, pricing, administration, terms and conditions, or marketing, within the State of Ohio; (2) which arise or are alleged to have arisen on or before the effective date of this Settlement Agreement; and (3) which are or could have been raised in the litigation captioned *Toledo Fair Housing Center, et al. v. Nationwide Mutual Insurance Company, et al.*, Lucas County Common Pleas Court Civil Action No. 93-1685, including without limitation all actions arising or alleged to arise under the Ohio Civil Rights Act generally, the Ohio Fair Housing Act (Ohio Revised Code Section 4112.02(H)), the Ohio Insurance Code, the federal Fair Housing Act (Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.*), 42 U.S.C. § 1981, and all statutory or common law claims, including all claims for attorneys fees and costs.

ENTERED INTO THIS 20ᵗʰ DAY OF APRIL, 1998.

TOLEDO FAIR HOUSING CENTER

BY: _____

FAIR HOUSING OPPORTUNITIES
OF NORTHWEST OHIO, INC.

BY: _____

NELLIE EDWARDS

BY: _____

NATIONWIDE MUTUAL INSURANCE COMPANY
AND NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY

BY: _____

MARIE BOYD

BY: _____

PAULETTE HARDNETT

BY: _____

WILMA HARRIS

BY: _____

MARIAN PEARCE

BY: _____

JANICE RIVERS

BY: _____

JAMES SUTTON

BY: _____

CHARLES TAYLOR

BY: _____

STEPHEN M. DANE,
COUNSEL FOR PLAINTIFF CLASS

ROSE NEWTON

BY: _____

HELEN PHILLIPS

BY: _____

ROBERT RIVERS

BY: _____

SANDRA SUTTON

BY: _____

APPENDIX B

IN THE COMMON PLEAS COURT OF LUCAS COUNTY, OHIO

TOLEDO FAIR HOUSING CENTER, )    CASE NO. 93-1685
MARIE BOYD, PAULETTE
HARDNETT, on behalf of themselves, and )    JUDGE McDONALD

HELEN PHILLIPS, MARIAN )
PEARCE, CHARLES TAYLOR, ROSE
NEWTON, NELLIE EDWARDS, )
SANDRA SUTTON, JAMES SUTTON,
WILMA HARRIS, ROBERT RIVERS, )
JANICE RIVERS, on behalf of
themselves and a class of all other similarly )
situated,
)
       Plaintiffs,
)
v.
)
NATIONWIDE MUTUAL
INSURANCE COMPANY, )
NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, )

       Defendants.

## NOTICE OF PROPOSED SETTLEMENT AND HEARING

\* \* \* \* \* \* \* \* \* \*

THIS NOTICE MAY AFFECT YOUR RIGHTS.  PLEASE READ CAREFULLY.

TO:    ALL PERSONS WHO HAVE OWNED HOMES IN CENSUS TRACTS 8, 14,
15, 16, 19, 21, 22, 23, 24.02, 25, 26, 28, 31, 32, 33, 34, 35, 36, 37 AND 66,
WITHIN THE CITY LIMITS OF TOLEDO, OHIO AT ANY TIME FROM
JULY 1, 1979 TO THE PRESENT.

### 1. Why Are You Receiving This Notice?

This notice is to inform you of a proposed settlement of a lawsuit brought against Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company by the Toledo Fair Housing Center, certain individual plaintiffs, and a class of homeowners in Toledo's African-American neighborhoods. If, between July 1, 1979 and the present, you *owned and lived in* a one to four-unit residence within the areas of the City of Toledo bounded by the shaded areas of the map below, and you did not file a Request for Exclusion on or before April 15, 1997, you are a member of the plaintiff class. This Notice describes the class action and the proposed Settlement Agreement and advises of the date, time, and place of a hearing to be held by this Court to decide whether the Court will give final approval to the Settlement. You will be bound by all orders issued by the Court regarding the Settlement.

2. **What Are The Settlement Terms With Respect To Class Claims?**

Under the proposed Settlement Agreement, if granted full approval by the Court, a Claim Fund of Two Million Dollars ($2,000,000.00) will be created to compensate certain homeowners in Toledo's African-American neighborhoods, and a special low interest loan fund will be established to provide below market interest rate loans to class members. Nationwide will also provide $500,000.00 to provide financial assistance to low and moderate income home buyers in Toledo's African-American neighborhoods. In addition to this monetary relief, Nationwide has agreed to make certain changes in its business practices and to seek to expand its presence in African-American neighborhoods. These terms are explained in further detail in Section 6 of this Notice.

**The fact that you have received this notice does not mean that you are a member of the plaintiff class, or that you are eligible to receive a share of the Claim Fund or participate in the loan fund; it means only that you own real property in an African-American neighborhood in Toledo, and that you might be eligible to receive a share of the Claim Fund or participate in the loan fund.**

3. **What Was This Lawsuit About?**

In this lawsuit, the Toledo Fair Housing Center and certain individual plaintiffs, including the class representatives, alleged that defendants Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company ("Nationwide") unlawfully discriminated against African-American neighborhoods in their homeowners insurance business in violation of Ohio's Fair Housing Act, Ohio Revised Code §4112.02(H).

The plaintiffs contended that Nationwide engaged in the practice of discriminatory "redlining" of Toledo's African-American neighborhoods. Plaintiffs alleged that Nationwide or its agents used sales techniques and practices that discouraged homeowners in African-American neighborhoods from purchasing insurance; that Nationwide failed to make insurance available in African-American neighborhoods under the same terms and conditions as those available to homeowners in white neighborhoods; and that Nationwide canceled, or refused to issue or renew, policies because of the racial composition of the neighborhood within which the insured property was located. Plaintiffs sought remedies including an injunction to end any allegedly discriminatory practices, compensatory and punitive monetary damages, and attorneys' fees and costs.

Nationwide denies that it has done anything wrong or unlawful. Specifically, Nationwide denies that it or its agents engaged in any practices with either the intent or effect of discouraging homeowners in African-American neighborhoods from purchasing insurance from Nationwide. Nationwide also denies that it applied different terms and conditions to insurance policies depending on either the race of the prospective or actual policyholder or the racial composition of neighborhoods.

**Although the Court has authorized Notice to be given of the proposed Settlement, this Notice does not express the opinion of the Court on the merits of any claims or defenses asserted by either side in the Lawsuit.**

**4.     What Is The Purpose Of This Notice?**

After litigating this case for more than 4 years, the Toledo Fair Housing Center, the individual plaintiffs, and Nationwide have proposed a settlement of the lawsuit to the Court. Because this is a Class Action, and the Settlement will affect the rights of many persons other than the individual plaintiffs, the Court must make a finding that the Settlement Agreement is just and must grant final approval of the Settlement Agreement before the settlement becomes final. The purpose of this notice is to inform potential members of the plaintiff class of the proposed settlement and of their rights if they are indeed class members.

**5.     Who Represents The Class?**

The Court has already ruled that the following individual plaintiffs adequately represent the class as Class Representatives: Helen Phillips, Marian Pearce, Charles Taylor, Rose Newton, Nellie Edwards, Sandra Sutton, James Sutton, Wilma Harris, Robert Rivers, and Janice Rivers. The remaining named plaintiffs — the Toledo Fair Housing Center, Paulette Hardnett, and Marie Boyd - are not representatives of the class.

The Court has designated as Class Counsel Stephen M. Dane and the law firm of Cooper, Walinski & Cramer, L.P.A. Class Counsel represents the interests of the class and you will not be charged for their services. You may hire your own attorney to advise you, but if you hire your own attorney, you will be responsible for paying that attorney's fees and costs. Class members are neither individually nor collectively responsible for the costs and fees of Class Counsel, nor will Class Counsel be compensated from the principal of the Claim Fund or any other fund established by this Settlement. Fees and costs of Class Counsel for administration of this Settlement will be paid

from interest accrued on the Claim Fund. All other fees and costs of Class Counsel, as determined and approved by the court, will be paid by defendants.

### 6. What Are The Proposed Settlement Terms?

The proposed settlement includes an Agreed Order and a Settlement Agreement. The terms and conditions set forth in the Agreed Order and Settlement Agreement have been negotiated and agreed to by and among the Toledo Fair Housing Center, its governing board Fair Housing Opportunities of Northwest Ohio, Inc., the individual plaintiffs, and Nationwide. Unless otherwise stated, the settlement applies throughout the State of Ohio. A copy of the Settlement Agreement, which contains the full terms of the settlement, is on file with the Clerk of the Court, Lucas County Common Pleas Court. The Settlement Agreement, if approved, provides for both monetary relief and changes in Nationwide's business practices.

**Changes in Nationwide's business practices.** The settlement, if approved by the Court, will result in certain changes with respect to Nationwide's business practices relating to the marketing and underwriting of homeowners insurance. The intent of these changes is to ensure that Nationwide homeowners insurance is and will continue to be available on a non-discriminatory basis throughout the State of Ohio. This notice summarizes below the key business practices that Nationwide will be obligated to follow pursuant to this settlement.

### A. Underwriting Criteria

During the term of the Settlement Agreement (4 years): Nationwide will not use the age of a dwelling or its market value as underwriting or eligibility criteria for its homeowners policies. Nationwide will offer to each customer whose dwelling passes Nationwide's dwelling condition inspection or who otherwise satisfies Nationwide's underwriting guidelines the option of selecting replacement cost coverage or repair cost coverage on the dwelling and/or contents. Rejected applicants and persons whose Nationwide homeowner's insurance is canceled or non-renewed (for reasons other than non-payment of premiums by the policyholder) will receive notice from Nationwide of the reason(s) for the rejection or cancellation and what repairs, if any, can be made to make the property eligible for insurance.

### B.    Homeowners Insurance Pricing

In setting homeowners insurance prices, Nationwide will not consider in any way the age of the home (except earthquake coverage, or as necessary to make available new home credits), the market value of the home, the relationship between the home's market value and replacement cost, the credit history of the prospective insurance customers, or characteristics that are unfairly discriminatory and not reasonably relevant to the insurance risk. Nationwide also will not consider in setting a price for insurance coverage the race or ethnicity of the homeowner or the racial composition of the area in which the homeowner resides.

### C.    Company Presence in Urban Areas

Nationwide will work to increase its presence in Toledo's African-American neighborhoods, as well as in other Ohio cities. Nationwide agrees to place an agent in an area of Toledo with a significant African-American presence within twelve (12) months after the settlement takes effect. Nationwide will use reasonable efforts to recruit and retain agents to locate in and serve predominantly African-American neighborhoods in urban areas in the State of Ohio and will also encourage agents located outside African-American neighborhoods to insure properties located in these neighborhoods.

### D.    Marketing

Nationwide will take several steps to market its products to homeowners in the African-American neighborhoods. These steps include advertising in minority communities, representing minorities in its advertising materials, and displaying the Equal Housing Opportunity logotype, statement, or slogan on all print media, radio, and television advertisements.

### E.    Training

Nationwide will train its employees and agents in the State of Ohio and, specifically within the City of Toledo, with respect to fair and equal homeowners insurance business practices. The Toledo Fair Housing Center will also conduct fair housing training for selected Nationwide employees and officials with responsibility for the City of Toledo.

### F.    Enforcement, Reporting, and Records

To ensure that Nationwide's independent insurance agents also comply with the terms of the settlement, Nationwide has contracted with a testing organization to conduct tests of Nationwide agents. Class Counsel will have the opportunity to review and provide written comments with

respect to the design and content of the testing program. Toledo will be one of the cities tested and Class Counsel will receive copies of all test results relating to Toledo.

Nationwide's compliance with the settlement terms will be monitored by Class Counsel. Nationwide will report to Class Counsel on an annual basis the steps it has taken to fulfill its obligations under the Settlement Agreement which relate to activities in Toledo or further benefit of the plaintiff class. The Court will retain jurisdiction over this case for the four year settlement period to enforce the terms of the Settlement Agreement.

**Monetary relief.** In addition to changes in Nationwide's business practices, the proposed settlement will provide monetary relief to certain class members or to designated organizations to be used for the benefit of the class as a whole.

A.     Direct Contributions for Community Investment

Over the four-year term of the Settlement Agreement, Nationwide will provide a total of $500,000 to provide assistance for low and moderate income home buyers seeking to purchase and/or repair single family owner-occupied homes in Toledo's African-American neighborhoods. The funds shall be used to provide one or more of the following types of financial assistance: down payment assistance, closing cost assistance, second mortgages, purchase/rehab loans, below market interest rate loans, and home ownership counseling. This financial assistance program will be offered through an organization to be agreed upon by the Nationwide and Class Counsel.

B.     Low Interest Loan Fund

Nationwide will provide to Class Counsel, as trustee for the Class, $500,000 (Five Hundred Thousand Dollars) to be deposited in a financial institution for a term of not less than five years, subject to an express requirement that the financial institution shall create and administer a loan program to provide class members below market interest rate loans for any dwelling-related purpose. Interest accruing on the term deposit shall be used to pay the administrative costs of the loan program. At the expiration of the deposit term, the principal amount and any remaining interest will be withdrawn by Class Counsel and that money will be donated to one or more qualified organizations for community development purposes within Toledo's African-American neighborhoods.

C.    Payment to Fair Housing Opportunities of Northwest Ohio, Inc.

Nationwide will pay to Fair Housing Opportunities of Northwest Ohio, Inc., a 501(c)(3) charitable corporation, the sum of Five Hundred Thousand Dollars ($500,000), to use for fair housing education and outreach activities in Northwest Ohio.

D.    *Compensation to Individuals — Summary*

Nationwide will deposit into a Claim Fund $2,000,000 (Two Million Dollars) that will be distributed to persons in the following categories:

| Category | Amount |
| --- | --- |
| Persons denied insurance by Nationwide | pro rata |
| Persons receiving repair cost policies from Nationwide | pro rata |
| Persons receiving repair cost policies from Nationwide who suffered under-insured losses | Actual amount of under-insured loss, not to exceed $20,000 |
| Named individual non-tester plaintiffs | $20,000 each |
| Named individual tester plaintiffs | $10,000 each |
| Total | $2,000,000 |

To recover from the Claim Fund:

1.    All Claimants must establish that they owned and resided in a single family (one- to four-unit) home in an African-American neighborhood in Toledo between January 1, 1990 and April 15, 1998; and

2.    All Claimants will be required to submit information regarding the condition of their home indicating that the home was an insurable risk; and

3.    At least one of the following events must have occurred with respect to the Claimant:

    a.    Nationwide denied or canceled insurance; OR

    b.    Nationwide issued a repair cost policy; OR

    c.    Nationwide issued a repair cost policy and the claimant suffered an insured loss that exceeded policy limits.

No person will be entitled to a share of the Claim Fund if his or her home posed a significant hazard that would have justified the denial of insurance.

E.    Miscellaneous

Claims for compensation from the Claim Fund will be processed through a Claim Administrator. It will be the job of the Claim Administrator to determine the integrity of claim information, to verify that claimants satisfy certain specified criteria, and to calculate and distribute claimant benefits. Decisions of the Claim Administrator will be subject to final approval by a Class Claim Review Committee. Although Nationwide may provide relevant information to the Claim Administrator, Nationwide will play no role in nor have any responsibility for determinations of a person's eligibility for compensation, or of the amounts to be awarded. The cost of providing this Notice, and the cost of processing all claims filed for compensation, will be paid out of the Claims Fund. No monies will be returned to Nationwide.

F.    Attorneys Fees and Costs

Attorneys fees and costs incurred by Class Counsel will be paid by Nationwide. The amount of these fees and costs will be determined by the Court at the fairness hearing set for August 13, 1998. Although Class Counsel have not yet filed their fee petition with the Court, Class Counsel have represented to the Court that their petition will seek $1,500,000.00 in fees and $350,000.00 in costs. The fee petition itself will be filed with the Clerk of Court on or before June 8, 1998 and may be reviewed by any class member in the office of the Clerk after that date. Any person who has objections to the fee petition must file those objections in writing no later than July 10, 1998. Only persons who have filed written objections to the fee petition will be permitted to address the issue of attorneys fees and costs at the fairness hearing.

The interest on the principal of the Claim Fund may be used to pay attorneys' fees and expenses incurred by Class Counsel in the implementation and monitoring of the Agreement. No portion of the principal of the Claim Fund, or of any other fund established by this Agreement, shall be used to pay attorneys fees or legal costs.

7.    What Are Your Rights As A Class Member?

If you have not filed a timely request for exclusion from the class and you are a class member, you have the following rights:

1. The named plaintiffs will act as your representatives and plaintiffs' attorneys will act as your counsel in enforcement of the Settlement Agreement. Upon approval of the settlement, the Class Committee will also act as your representatives in making decisions about class claims.

2. If the Court grants final approval of the Agreed Order and Settlement Agreement, then you will be bound by all of the terms of the Agreed Order and Settlement Agreement. As a class member, your claims against the defendants for damages arising from its alleged discriminatory conduct cannot be presented in any other lawsuit.

3. You may be eligible to be considered for a share of the Claims Fund and will benefit from the other portions of the Agreed Order and Settlement Agreement. As a condition of obtaining a share of the Claims Fund, you will be required to show that you meet the criteria in the Settlement Agreement generally described above.

## 8. Do You Have A Right To Object To The Proposed Settlement?

The Court has already made a preliminary finding that the proposed Agreed Order and Settlement Agreement are fair and just. As required by applicable law, the Court has scheduled a hearing to determine whether it will grant final approval to the settlement terms. The Court will hold this hearing at 11:00 a.m. on Thursday, August 13, 1998 in the courtroom of Judge Frederick H. McDonald, Lucas County Courthouse, 700 Adams Street, Toledo, Ohio 43624.

You do not need to appear at the hearing or to file anything with the Court before the hearing. If you are a class member, then your interests will be adequately represented at the hearing by the Class Representatives and Class Counsel. Subject to the following requirements, however, you may submit written comments on the Settlement Agreement to the court, and you may speak to the court, either personally or through your own attorney, at the hearing on August 13, 1998.

If you wish to object to the proposed Settlement Agreement, you may do so by mailing a written objection to the Clerk of Court, Lucas County Court of Common Pleas, 700 Adams Street, Lucas County Courthouse, Toledo, Ohio 43624. To be considered by the Court, your objection must be made in writing and must be received by the Clerk of Court on or before July 10, 1998. If you also wish to state your objection to the Settlement Agreement at the hearing itself, you may do so, but only if you have submitted a timely, written objection as set forth above. If you have submitted such an objection, then you may appear at the hearing either by yourself or through your attorney. If you wish to be represented at the hearing by an attorney, your attorney must notify the Clerk of Court and Class Counsel of your desire in writing by July 10, 1998.

9. **Additional Information**

You may examine the pleadings and other records of this litigation, including complete copies of the Settlement Agreement, during regular office hours at the office of the Clerk of Court, Lucas County Court of Common Pleas, 700 Adams Street, Lucas County Courthouse, Toledo, Ohio.

If you need additional information or have questions about any of the matters discussed in this Notice, you may contact Class Counsel. You are also free to seek the advice of an attorney of your choice. Please do not contact the Court or the Clerk of Court.

10. **How Do I Make A Claim For Recovery?**

Requests for Claim Forms: A Claim Form to obtain compensation from the Claim Fund will be mailed to all identifiable class members **after the Court has finally approved the Settlement Agreement.** Class members will be notified at that time of the deadline for submitting claims. If you wish to receive a Claim Form, please submit your written request and current address to:

Stephen M. Dane, Esq.
Class Counsel
COOPER, WALINSKI & CRAMER
900 Adams Street, P.O. Box 1568
Toledo, Ohio 43603-1568

Judge Frederick H. McDonald